**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| SAFEFLIGHT, INC., | ) | CASE NO.: 5:05CV2622 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | (Resolving Document #34) |
| CHELTON FLIGHT SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

In this patent case, Plaintiff Safeflight, Inc. ("Safeflight") alleges that Defendant Chelton Flight Systems, Inc. ("Chelton") infringed its patent, U.S. Patent Number 5,343,395 ("'395 patent"). Chelton raises in its answer, among others, the affirmative defense of invalidity. Chelton now moves this Court for summary judgment claiming that the '395 patent is invalid based on 35 U.S.C. §§ 102(b) and (g) and 103 due to prior art developed by NASA and printed for public use. Chelton alternatively argues that claims 2 and 13 of the '395 patent are invalid as inoperative, non-enabled, or indefinite under 35 U.S.C. §§ 101 and 112. Safeflight has filed an Opposition to the Motion to which Chelton filed a Reply. The Court held a hearing on the Motion on October 12, 2007. Having considered the Motion, Response and Reply thereto, pleadings, exhibits, argument and applicable law the Court finds that summary judgment for Chelton is proper and is therefore GRANTED.

## FACTS

The ABSTRACT of the '395 patent describes the invention:

An aircraft navigational facilitation system and method of use thereof operates in conjunction with conventional apparatus which provides

1

>aircraft current situational information. The system includes a memory for storing runway and landing information for each of a plurality runways. An input device, such as a keyboard, is provided for selecting a destination runway. The system further includes a video display device which simulates the view from a cockpit of the aircraft, with the view including the destination runway. The video display device is driven by a processor which uses the current situational information and the runway information for periodically generating display signals for the video display device. The display signals cause the video display to provide an updated and scaled simulated three dimensional view of a perimeter of the destination runway from a perspective of the cockpit of the aircraft. The video display device also provides further information including runway identification information, runway centerline, and an indication of a projected touch[-]down point of the aircraft relative to the perimeter of the destination runway.

Safeflight's Complaint, Exhibit A, p. 1. In more general terms, the '395 patent is a video display system which assists a pilot in landing an aircraft onto a variety of pre-programmed airport runways. Once the pilot uses the keyboard to select from a number of pre-programmed runways, the system provides a three-dimensional view, from the pilot's perspective, of the runway (including identification information and a centerline) and a projected touch-down point based on the aircraft's current situational information.

In its Motion, Chelton alleges that Safeflight's '395 patent is no more than a simplified version of pilot display formats developed by NASA and printed for public use more than 10 years prior to the patent application. In support of its argument, Chelton presents declarations from former NASA scientists George Steinmetz ("Steinmetz") and Samuel A. Morello ("Morello"); a paper presented in St. Louis, Missouri titled *Have We Overlooked the Pilot's Role in an Automated Flight Deck?*, written by Steinmetz, L. H. Person ("Person"), and Morello - published by NASA for use in the public domain in 1981; a paper presented at the Aircraft Safety and Operating Problems Conference, 18 - 20 October 1976, titled *Review of Operational Aspects of Initial Experiments Utilizing*

*the U.S. MLS,* written by Thomas M. Walsh, Morello, and John P. Reeder - published by NASA;  *Flight-Test Evaluation of Two Electronic Display Formats for Approach to Landing Under Instrument Conditions,* written by Morello, Charles E. Knox ("Knox"), and Steinmetz - published by NASA in December 1977; *A Piloted-Simulation Evaluation of Two Electronic Display Formats for Approach and Landing,* written by Steinmetz, Morello, Knox, and Person - published by NASA in April 1976; *SST Technology Follow-On Program-Phase 2. ADEDS Functional/Software Requirements* written by A. J. Martin and D. H. Cosley for Boeing Commercial Airplane Co., Seattle, WA in December 1973 - unclassified and approved for public release; FAR/AIM 2002 by the U.S. Department of Transportation in July 2001; the '395 patent; and Chapter 3-1 titled "Electronic Flight Display Research" from the book *Airborne Trailblazer: two decades with NASA Langley's 737 flying laboratory* written by Lane E. Wallace - published by NASA in 1994.

In support of its Response, Safeflight provided:  various deposition pages from Steinmetz, Morello, Richard Price, and Gordon Pratt; a Corporate Management Profile for, among others, Carl O. Webb, John S. Barber, and William A. Mathieu;  and a group of documents which include a May 28, 1999 news release from the Research Triangle Institute titled, "Synthetic Vision Could Help General Aviation Pilots Steer Clear of Fatalities," a news release from http://www.avidyne.com/Synthetic%20Vision%20PR.html titled "NASA Selects Avidyne and Avrotec to Lead Synthetic Vision Program," an advertisement from AirCell, an article titled "Synthetic Vision Could Help General Aviation Pilots Steer Clear of Fatalities," and a press release from

3

May 1999 titled "NASA Award Granted to RTI/Archangel Team - Synthetic Vision Could Help Pilots Steer Clear of Fatalities."

Finally, attached to the Reply Brief for support, Chelton provided various pages from the depositions of Steinmetz and Earl C. Peterson III.

Chelton objects to Safeflight's Exhibit E titled "Corporate Management Profile" for lack of foundation and authenticity.  This Court agrees and will not consider Exhibit E attached to Safeflight's Response in consideration of the Motion.  Additionally, Safeflight submitted exhibits at the hearing held on October 12, 2007.  Chelton, however, objected to those exhibits as they were not attached to Safeflight's opposition to the motion for summary judgment.  The Court agreed and did not admit the proposed exhibits for consideration on the motion for summary judgment.

## APPLICABLE LAW

Summary Judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).  The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact.  *Celotex Corp.,* 477 U.S. at 323. This is so that summary judgment can be used to dispose of claims and defenses which are factually unsupported.  *Id.* at 324.  The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried.  *Id.*  The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp.,* 477 U.S. at 324. The nonmoving party must oppose a proper summary judgment motion "by any kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves ..." *Id.* Rule 56(c) states, "... [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A scintilla of evidence in favor of the nonmoving party is not sufficient.

## DISCUSSION

The first step in construing a patent's validity is to construe the claims of the patent. *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.,* 225 F.3d 1349, 1355 (Fed. Cir. 2000). Claim 1 of the '395 patent is an independent apparatus claim and Claims 2, 3, and 5 through 11 are apparatus claims that depend from Claim 1. Claim 4 is dependent from Claim 3 and describes the system in Claim 3. Claim 12 is an independent method claim and Claims 13, 14, and 16 through 18 depend from Claim 12 and describe the method contained in Claim 12. Claim 15 is dependent from Claim 14 and describes the method of Claim 14.

1. Claim construction for the '395 patent

5

Claim 1 describes the invention as a navigational facilitation system which periodically provides an aircraft with situational information. The system is comprised of: a memory which contains information on various destination runways sufficient to generate a display of the runway perimeter; an input device for selecting a destination runway (keyboard); a video display for simulating the view from a cockpit of the aircraft; and a processor which transmits information between the aircraft situational location apparatus,[1] the memory, the keyboard, and video display. Additionally, the processor uses current aircraft situational information[2] to supply the video display with signals to produce a three-dimensional view of the perimeter of the destination runway from the cockpit's perspective.

Claim 2 is a dependent claim to Claim 1. It states that the apparatus in Claim 1 includes a processor which uses glide slope information provided by the aircraft's current situational apparatus to generate signals to the video display to provide a projected touch-down point on the runway.

Claim 3 is also a dependent claim to Claim 1. It states that the apparatus in Claim 1 would use the aircraft's current situational information to provide an indication of when the aircraft has reached the first and the second predetermined distance from the runway.[3]

---

[1] The Patent does not define what "aircraft situational location apparatus" encompasses. The Court, however, first looks to the definition of "apparatus." *Webster's International Dictionary* defines apparatus, in pertinent part, as "a collection or set of … instruments … designed for a particular use …." Therefore, given the words' common meanings, the Court interprets the phrase "aircraft situational location apparatus" as including the aircraft's gauges which provide the pilot with information about the current location of the aircraft.

[2] The Patent does not define what "aircraft situational information" entails. The Court, however, interprets this phrase by the words' common meanings to entail all information regarding the aircraft's current location.

[3] The designated airport sends out a signal to the aircraft when it reaches a predetermined distance from the runway.

The processor generates display signals when the aircraft is between the first and second predetermined distance.

Claim 4 is a dependent claim to Claim 3.  It describes that the system of Claim 3 as including that the first predetermined distance is at an outer marker location of the designated runway and that the second predetermined distance is at a middle marker location of the designated runway.

Claim 5 is a dependent claim to Claim 1.  It describes the apparatus of Claim 1 as including the information that the perimeter of the designated runway consists of a near width edge, a far width edge (displayed as a horizon reference), a right longitudinal edge, and a left longitudinal edge.

Claim 6 is a dependent claim to Claim 1.  It describes the apparatus of Claim 1 as including that the input device is a keypad.

Claim 7 is a dependent claim to Claim 1.  It describes the apparatus of Claim 1 as having a memory that is a "read only memory" ("ROM").

Claim 8 is a dependent claim to Claim 1.  It describes that the memory of the apparatus described in Claim 1 also includes a compact disk read only memory.

Claim 9 is a dependent claim to Claim 1.  It describes the apparatus of Claim 1 as including the designated runway's size and identification information.  This identification information is provided on the video display.

Claim 10 is a dependent claim to Claim 1.  It describes the apparatus of Claim 1 as including a simulated view of the perimeter of the designated runway which is intermittently scaled and updated.

Claim 11 is a dependent claim to Claim 1.  It describes the apparatus of Claim 1 to include a video display to provide an indication of the projected position of the aircraft relative to the simulated view of the runway.

Claim 12 is an independent method claim for facilitating the navigation of the aircraft.  It provides the method for which the apparatus of Claim 1 periodically provides the aircraft's current situational information.  The method consists of retrieving, from a memory, runway information for the requested runway.  The information received would include display-generation information generating periodic display signals sufficient for the apparatus to create a visual display for the chosen runway.  The information retrieved would come from current situational information for a number of runways.  The display signals would be conveyed to the video display which would provide a simulated three-dimensional view of the perimeter of the chosen runway from the cockpit's perspective.  This view would be scaled and updated based on the aircraft's current situational information which is periodically provided.

Claim 13 is a dependent claim to Claim 12.  It describes the method of Claim 12 as including glide slope information received from the aircraft's current situational information apparatus.  This information is then used to generate display signals to the video display, which would then further provide an indicated touch-down point for the aircraft onto the designated runway.

Claim 14 is a dependent claim to Claim 12.  It describes the method of Claim 12 as including an indication of when the aircraft reaches both the first and second predetermined distances from the designated runway.  This would include display signals

being transmitted to the video display when the aircraft is between the first and second predetermined distances.

Claim 15 is a dependent claim to Claim 14. It states that the first predetermined distance in Claim 14 is an outer marker location for the designated runway and the second predetermined distance is the middle marker location for that runway.

Claim 16 is a dependent claim to Claim 12. It describes the method of Claim 12 as including a video display that provides the designated runway's information, including size and identification information.

Claim 17 is a dependent claim to Claim 12. It describes the method of Claim 12 as including a simulated view of the perimeter of the designated runway, intermittently scaled and updated.

Claim 18 is a dependent claim to Claim 12. It describes the method of Claim 12 wherein the video display provides a projected position of the aircraft relative to the simulated view of the designated runway.

2. Patent validity

Chelton alleges that Safeflight's '395 patent makes no contribution to the state of the art but merely describes, in general terms, technology developed and publicized solely for the benefit of the public by NASA over 10 years prior to the patent. The patent at issue is given the presumption of validity under 35 U.S.C. § 282. Additionally, all claims in a patent are "presumed valid independently of the validity of other claims." 35 U.S.C. § 282.

When challenging the validity of a patent, the challenger must produce clear and convincing evidence on all issues relating to the status of a particular reference as prior

art. *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576, 38 USPQ2d 1288, 1290 (Fed. Cir. 1996). However, if the prior art was not disclosed to the Patent Office during the application process, as in this action, the challenger's burden "may be more easily carried." *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.,* 225 F.3d 1349, 1355-56 (Fed. Cir. 2000). If the challenger produces clear and convincing evidence that the invention was previously made in this country by another, the burden of production shifts to the patentee to produce evidence sufficient to demonstrate a genuine issue of material fact as to whether the inventor abandoned, suppressed, or concealed it. *Apotex USA, Inc. v. Merck & Co., Inc.,* 254 F.3d 1031, 1037 (Fed. Cir. 2001). The burden of persuasion remains with the one challenging the validity of the patent. *Id.* at 1037-38.

      a.  <u>Challenge under 35 U.S.C. § 102(g)</u>

Chelton challenges the validity of Safeflight's '395 patent under 35 U.S.C. § 102(b) and (g) and § 103. Section 102(g) provides in pertinent part, "A person shall be entitled to a patent unless - . . . before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it . . ." Because the Court finds § 102(g) dispositive, it is unnecessary to discuss the other sections of the statute or Chelton's alternative arguments.

As Chelton has done here, section 102 not only protects the first inventor but also may be asserted as a defense in an infringement suit. *Apotex USA, Inc.,* 254 F.3d at 1035. The prior art referred to in the statute must "contain all of the elements of the invention or their equivalent in a single reference or structure." *Kistler Instrumente AG. v. U. S.*, 628 F.2d 1303, 1309 (Ct.Cl. 1980). If it does so, the prior art anticipates the later invention. More simply, if a prior art would infringe, it anticipates.

10

Invalidity by anticipation requires that the prior art describe or contain "every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Systems, Inc. v. Kent State University,* 212 F.3d 1272, 1282 (Fed. Cir. 2000); *In re Omeprazole Patent Litigation*, 483 F.3d 1364 (Fed. Cir. 2007). "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering Corp. v. Geneva Pharmaceuticals*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). Additionally, however, "[i]nherency is not necessarily coterminous with knowledge of those of ordinary skill in the art. Artisans of ordinary skill may not recognize the inherent characteristics or functioning of the prior art." *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1349 (Fed. Cir. 2002); *see also Schering Corp.*, 339 F.3d at 1377 (rejecting the contention that inherent anticipation requires recognition in the prior art). In order to determine whether a claim has been anticipated, the Court must do a comparison of the construed claim to the alleged prior art. *Id.* (citation omitted).

As stated in the "FACTS" section above, Chelton attached to its Motion several published documents to support its arguments. Additionally, Chelton provided affidavits from Steinmetz and Morello, two NASA scientists who performed the research and wrote some of the provided papers, Steinmetz and Morello. The Court notes that neither affiant has any interest in this litigation.

Both affidavits assert that the " '395 [patent] discloses no more than a generalized version of the earliest work we performed in the [NASA] TCV[4] Program with displays

---

[4] According to the submitted affidavits, the TCV Program was funded by the U.S. government and focused on researching how to apply modern technology to improve air traffic safety and efficiency at U.S. airport

11

and perspective runways." Chelton's Amended Motion for Summary Judgment, exhibits 2 & 12, paras. 8. Safeflight attacks the credibility and content of the affidavits. Safeflight first argues that Chelton has failed to sufficiently identify a person of ordinary skill in the art for the time of the invention of the '395 patent. The Court agrees that the alleged person of ordinary skill in the art suggested by Chelton encompasses a broad range of individuals, being "a researcher in the field of aircraft navigation having a Ph.D., Master, or a Bachelor of Science degree in aerospace engineering, electrical engineering, computer science, physics, math or the like." *Id.* at para. 6. However, because of the aspects of the '395 patent -- geography, computer programming, electrical display equipment, aircraft navigational gauges, etc. -- the Court finds that this definition is appropriate in this situation. Additionally, Safeflight offered no alternative argument for what it believes a person of ordinary skill in the art at the time of the invention would be.

In its Opposition, Safeflight points out that even those who developed the system for Chelton and the '395 patent inventor have extreme differences with their own education and experience. Mr. Price, from Chelton, holds a bachelor's and master's degree in aerospace engineering and has Navy pilot experience but no experience working in the field of avionics. Whereas, Mr. Pratt, also from Chelton, holds a bachelor's degree in general studies, has an interest in aviation and practical experience building airplanes and developing a computer automated design program for instrument panels. Mr. Watts, the inventor of the '395 patent, does not have an engineering degree but has been a pilot for a number of years, is a certified flight instructor and is active in

---

terminals. It included a Boeing 737-100 aircraft configured to receive research equipment and featured a second aft flight deck, without outside visibility where the piloting was done through the use of video displays. The program also included a ground-based simulator to simulate the Boeing aircraft. Steinmetz and Morello affidavits, paras. 2 & 3.

flight operations. The Court, therefore, finds that the definition of a person ordinarily skilled in the art is necessarily broad and thus adopts the proposed definition offered by Steinmetz and Morello.

Safeflight also argues that this Court should be suspicious of the proferred affidavits because: they are extremely similar in content; the documents referred to were provided by counsel rather than the affiant; there are errors common to both affidavits; Morello was uncertain about the meaning of a specific term in the patent, sought no clarification, and adopted what counsel had written as its meaning; Morello signed and returned the declaration without having a copy of the exhibits; and because the affidavits were prepared by counsel.

Initially, the Court is cognizant of the common practice of attorneys preparing affidavits for an affiant rather than having that affiant prepare such. The real question is whether the affiant reviewed the affidavit and swore to the truth of the matters asserted therein. In this instance, both Morello and Steinmetz declared "under penalty of perjury that the foregoing is true and correct." Additionally, it appears that Safeflight is making the allegation that the information contained in the affidavits was not from the affiants themselves, which appears to be incorrect. As stated in his deposition when this implication was made, Morello said that the attorney for Chelton "captured my comments over the phone as we talked through this and what references I thought supported what, what we had done, and he captured that and sent it to me in this form [the affidavit]." Safeflight's Memorandum in Opposition, exhibit B, p. 32. Secondly, it does not appear unusual that both scientists would attest to the same information as they both worked for NASA during the same time period, on the same projects, and co-authored the same

13

papers on the subject.  This also explains the common errors found in both affidavits.  Thirdly, there is no requirement that the affiant provide the documents referred to in the affidavit nor does it affect the affiant's credibility whether or not they retained copies of the exhibits.  The only argument that brings pause to this Court about the credibility of an affiant is Safeflight's argument that Morello was uncertain about the meaning of a specific term in the '395 patent, sought no clarification, and adopted what counsel had written as its meaning.  However, upon review of the deposition testimony, it appears that Safeflight is misinterpreting what was actually said by Morello.

>In Morello's deposition, the following discussion occurred:
>
>Q. Okay.  Were there any words or terms or phrases in the claims that you had any concern or trouble with as to what the claim meant or what the term meant?
>
>A.  I'm trying to think.  I think the only one that comes to mind is possibly the claims that have the word "glide slope" in them.  There was times I didn't know whether it meant glide slope or glide path.  But I think that's the only one that I . . .
>
>Q. Did you get that matter cleaned up, whether it meant glide slope or glide path?
>
>A.  I think I have.
>
>Q. Okay.  What did it mean in the claims?
>
>A. Whether - - there are cases when in claims, that I think it means the transmitted glide slope from the ground as opposed to the computed glide path of the airplane that one computes to the ground.
>
>Q. And who, who helped you clear that up, if anyone?
>
>A. I -- basically looking at the patent and my own knowledge of the nomenclature.
>
>Q. Did you ever inquire of Mr. Mings what glide slope or glide path meant in the context of the patent?

>    A.   No, I did not ask him that.
>
>    Q.   Did you discuss that with Mr. Steinmetz?
>
>    A.   Mr. Steinmetz and I did discuss that, because I was trying to make certain that I understood the patent and the use of, and sometimes the use of those two.  I did, I did discuss that with him.

*Id.* at pp. 33-35 (objections and responses thereto omitted).  This discussion does not support Safeflight's contention that Morello was uncertain about the meaning of a specific term in the '395 patent, sought no clarification, and adopted what counsel had written as its meaning.  To the contrary, the deposition testimony demonstrates that when Morello was uncertain about the meaning of the term "glide slope" as used in the '395 patent, he not only sought clarification on the issue with counsel but also relied on his *own* knowledge and its use in the '395 patent when determining its meaning.  The Court finds Safeflight's arguments to be without merit and finds no valid reason to question the credibility of the affidavits or the contents thereof.

      Safeflight also argues that the affidavits fail for want of probative value.  The basis for this argument is that Safeflight claims that the affidavits are in the nature of expert reports, replete with opinions as to what the level of ordinary skill in the art was and what would have been known, apparent, obvious or understood by such persons.  Upon review of the affidavits it appears that the affiants are mostly describing the equipment and tests that were used in the TCV program at NASA.  Occasionally, the affiants opine that a claim or method was known, apparent, obvious or understood by one of ordinary skill in the art at that time.  However, although the affiants are at the high-end of what would be considered one of ordinary skill in the art, they certainly fall into the category and are persuasive in their reasoning.  Additionally, Chelton has not produced

15

Steinmetz or Morello as experts, but merely as the prior art inventors who never sought a patent for their work due to the contract NASA had with the United States government for the development of this technology.

It is also important to note that contrary to Safeflight's contention, the affidavits from Steinmetz and Morello do not need corroboration as they are disinterested witnesses and have no stake in the outcome of this litigation. Specifically, the Federal Circuit stated in *Thompson v. Quixote Corp.,* 166 F.3d 1172, 1176 (Fed. Cir. 1999), that "corroboration is required only when the testifying inventor is asserting a claim of derivation or priority of his or her invention and is a named party, an employee of or assignor to a named party, or otherwise is in a position where he or she stands to directly and substantially gain by his or her invention being found to have priority over the patent claims at issue." The purpose of requiring corroboration is to prevent false testimony based on self-interest. *Id.* 1175-76. Because these witnesses do not have an interest in the litigation, the Court does not need corroboration but does note that Chelton has supplied sufficient corroboration to support the claims made in the affidavits.

Safeflight also argues that there is no evidence that the various features of the claimed invention were recognized and appreciated as such. In support of this argument, Safeflight points to a 1999 news release about NASA selecting various companies to develop "different applications of Synthetic Vision." Safeflight's Opposition to the Motion for Summary Judgment, exhibit F. The news release, however, is taken out of context. The purpose of the research is "to give pilots clear views of their surroundings in bad weather and darkness." This is to be done by using one of the company's "Cockpit Display System[s]" with weather penetrating sensor technology. *Id.* More

16

specifically, the system would combine "Global Positioning Satellite signals with . . . three-dimensional moving scenes that will show pilots exactly what's outside." *Id.* The stated purpose of the research is "to reduce or eliminate controlled flight into terrain caused by visibility-induced human error." *Id.*

The Court must compare each construed claim to the prior art to determine if a single prior art contains all the claims either expressly or implicitly. This is a unique situation in that Chelton does not claim that the '395 patent is a copy of the prior work from NASA but is a more generic or substandard form of the instrumentation that NASA developed and used over a decade before the patent application was made.

Rather than go through a lengthy discussion of each of the claims in the '395 patent, the Court has done a thorough review of the patent, the affidavits' discussion of each claim of the patent and a comparison with the prior art from NASA, and reviewed the supporting documentation of the prior art in a light most favorable to the non-moving party. Upon its own review of the provided documents compared to the claims in the '395 patent, this Court finds the affidavits to be credible in their comparison and further finds that Safeflight offers no arguments which contradict the findings. It is noted, however, that although many of the claims are not explicitly stated in the supporting documentation, they are inherent in each of the prior documents for the reasons stated in the Steinmetz and Morello affidavits. To be "inherent" in a prior art it must necessarily be present in the reference disclosure and one of ordinary skill in the art would recognize such. *Scripps Clinic & Research Foundation v. Genetech, Inc.,* 927 F.2d 1565, 1576-77 (Fed. Cir. 1991). One of ordinary skill in the art would recognize the '395 patent as a simpler version of the NASA work. Therefore, the Court finds that Chelton has produced

17

clear and convincing evidence on all claims in the '395 patent and has demonstrated that the prior art by NASA, exhibits A through E, contains either expressly or inherently, each of the claims and limitations of the patent.  Additionally, the Court does not find that one of ordinary skill in the art would have to enter into unnecessarily undue experimentation in order to practice the invention.

The Court next would be required to determine whether Safeflight has produced any evidence to demonstrate a genuine issue of material fact as to whether the inventor abandoned, suppressed or concealed the invention.  However, the Court can find no such evidence offered or produced by Safeflight.

## CONCLUSION

Therefore, it is determined that Chelton has produced sufficient evidence to demonstrate that there is no genuine issue of material fact that would necessitate the need for a trial in the above matter.  As such, Chelton's Motion for Summary Judgment is GRANTED.  Safeflight's '395 patent is found to be invalid and all claims made in the Complaint are hereby DISMISSED with prejudice.

So ordered.

Date: February 20, 2008

_____*s/ Judge John R. Adams*_____
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT